In the Matter of NICHOLAS A. TONIS, Appellant, against BOARD OF REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK, Respondent.

Argued January 17, 1946; decided April 18, 1946.

*Emanuel Wexler, Harry A. Gordon* and *Irving Gordon* for appellant. I. Improper issuance of a prescription for narcotics by a physician is and has always been a misdemeanor under New York State law. (*United States* v. *Jin Fuey Moy,* 241 U. S. 394; *M. A. Baptist Church* v. *Baptist Church in O. St.,* 46 N. Y. 131.) II. The directions contained in the statute and every rule and canon of statutory interpretation favor a misdemeanor construction. (*People ex rel. Carollo* v. *Brophy,* 294 N. Y. 540; *People ex rel. Marks* v. *Brophy,* 293 N. Y. 469; *Town of Putnam Valley* v. *Slutzky,* 283 N. Y. 334; *Matter of Wing* v. *Ryan,* 255 App. Div. 163, 278 N. Y. 710.) III. The statute must be given its obvious import. (*Cooper-Snell Co.* v. *State,* 230 N. Y. 249.) IV. Presumably, the enumeration in

the statute of " sell " and " prescribe " was intended to state separate and different crimes. (*Town of Fort Edward* v. *Hudson Valley Railway Co.*, 127 App. Div. 438; *Allen* v. *Stevens*, 161 N. Y. 122; *People* v. *Ruthven*, 160 Misc. 112; *Catalanello* v. *Cudahy Packing Co.*, 27 N. Y. S. 2d 637, 264 App. Div. 723.) V. Ordinary words must be given the common meaning they have for the average person. (*People* v. *Shakun*, 251 N. Y. 107; *Matter of Fimiani* v. *Board of Appeals of City of Buffalo*, 233 App. Div. 552, 258 N. Y. 613; *Matter of Hudson-Harlem Valley Title & Mortgage Co.* v. *White*, 251 App. Div. 1, 276 N. Y. 603; *Matter of Cowles* v. *Board of Regents*, 266 App. Div. 629; *Cooper-Snell Co.* v. *State of New York*, 230 N. Y. 249; *People* v. *Stoll*, 242 N. Y. 453.) VI. The Federal statute and decisions relied on by the court below are irrelevant. VII. *People* v. *Gennaro* (261 App. Div. 533, 287 N. Y. 657) does not support the decision appealed from.

*Nathaniel L. Goldstein, Attorney-General* (*Henry S. Manley, Orrin G. Judd, Wendell P. Brown* and *Edward L. Ryan* of counsel), for respondent. The crime to which petitioner pleaded guilty is a felony under the laws of the United States, and the illegal acts upon which the conviction was based constitute a felony under the laws of the State of New York. (*Jin Fuey Moy* v. *United States*, 254 U. S. 189; *Manning* v. *United States*, 31 F. 2d 911; *Nigro* v. *United States*, 117 F. 2d 624; *United States* v. *Abdallah*, 149 F. 2d 219; *People* v. *Gennaro*, 261 App. Div. 533, 287 N. Y. 657; *Menna* v. *Menna*, 102 F. 2d 617; *United States* v. *Doremus*, 249 U. S. 86; *People ex rel. Liss* v. *Supt. of Women's Prison*, 282 N. Y. 115; *American Surety Co.* v. *Marotta*, 287 U. S. 513; *People ex rel. Estate of Woolworth* v. *S. T. Comm.*, 200 App. Div. 287; *Matter of Goetz*, 71 App. Div. 272.)

CONWAY, J. This is an appeal from an order of the Appellate Division, Third Department, confirming the determination of respondent Board of Regents pursuant to which an order was made revoking petitioner's license to practice medicine in this State and canceling of record his registration as a physician. The revocation of license was upon the ground that petitioner had been convicted of a felony.

The relevant provisions of the Education Law (§ 1264, subd. 1; § 1251) provide, in part, as follows:

" § 1264. REVOCATION OF CERTIFICATES; ANNULMENT OF REGISTRATIONS. 1. Whenever any practitioner of medicine shall be convicted of a felony, as defined in section twelve hundred and fifty-one of this article, the registration of the person so convicted may be annulled and his license revoked by the department. * * * * "

" § 1251. QUALIFICATIONS * * * The conviction of felony shall be the conviction of any offense which *if committed within the state of New York would constitute a felony under the laws thereof.* * * * " (Emphasis supplied).

On December 5, 1944, petitioner, who was admitted to practice in 1920, pleaded guilty in the United States District Court, Southern District of New York, to two counts of an indictment charging him with two violations of Internal Revenue Code, section 2554, in that on two occasions (one count for each occasion) he " unlawfully, wilfully and knowingly did sell to John Port a quantity of a certain narcotic drug, to wit, approximately twenty one-quarter grain tablets, each tablet containing a quantity of morphine sulphate, a derivative and preparation of opium, * * * not in pursuance of a written order of the said John Port to the said defendant on a form issued in blank for that purpose by or under the authority of the Secretary of the Treasury, * * * ". The certificate of conviction was entitled " Sec. 2554 IR Code Unlawful sales of morphine sulphate," and merely stated that defendant was sentenced to imprisonment for one year and one day, which sentence was suspended, that defendant was fined $500 and that the other counts were dismissed.

What petitioner actually did was not to sell the morphine (in the ordinary sense of the word " sell ") but to prescribe it for an addict, not in the course of his practice, and the prescription was filled by a druggist who acted in good faith without knowledge of the unlawful issuance of the prescription. After the Federal conviction, petitioner received a letter from the Assistant Commissioner of Education advising him that his license was subject to revocation by reason of a conviction of a felony, and giving him the opportunity to have a hearing. Petitioner then moved in the Federal court for an amendment

of the certificate of conviction so as to show the true facts upon which the conviction was based. His motion was granted by the District Court Judge who wrote: "I feel in the interest of justice that the application should be granted. The true fact is that what we actually call a sale was not made. It is a sale by reason of a legal conclusion. In other words, the defendant took a part in an act which was part of a whole transaction which eventually resulted in a sale." The certificate was amended so as to read: " (The sales charged in the Indictment in counts 1 & 2 consisted of the following as a matter of fact: that on two different occasions defendant, a licensed physician, did, for a consideration, issue an order of prescription for morphine sulphate not in the regular course of his practice but to an addict for a prohibited use, although the prescription was filled by a druggist who acted in good faith without knowledge that the prescription was unlawfully used.) " The title of the amended certificate remained " Unlawful sales of morphine sulphate " and the sentence was unchanged.

It is petitioner's contention that his acts in prescribing the drug were not offenses " which if committed within the state of New York would constitute a felony under the laws thereof." (Education Law, § 1251, *supra.*) The issue is of course not whether petitioner shall escape disciplinary action but whether his license may be *automatically* revoked without a hearing before the Medical Grievance Committee.

It seems clear to us that, while we may feel that petitioner's acts here were as morally reprehensible as if he had actually sold the drug (in the ordinary meaning of " sold "), he could not have been convicted of a felony under the laws of this State. The Attorney-General, indeed, concedes that, while it is agreed that a sale to an addict is a felony, " mere illegal prescribing without more is only a misdemeanor under State law ", and states the question presented to us as follows: " The present case is the issuance of a narcotic prescription to an addict, with the intent and the result that there is a sale to the addict, although the doctor does not himself fill the prescription but it is filled by a druggist acting innocently and not in collusion with the doctor. Is that a felony? In other words, would the acts described constitute a ' sale ' under the State law? "

A brief summary of the history of the statutes involved is as follows. In 1927 a new article was added to the Public Health Law by Laws of 1927, chapter 672. Section 423 of that article provided as follows:

" § 423. Acts prohibited. It shall be unlawful for any person to possess, have under his control, *sell,* distribute, administer, dispense, or *prescribe* any habit forming drug except as provided in this article." (Emphasis supplied.)

Under section 421, three of the prohibited acts were defined as follows:

" 8. ' Sale ' includes barter, exchange or giving away, or offering therefor and each such transaction made by any person whether as principal, proprietor, agent, servant or employee.

" 9. ' Dispense ' includes distribute, leave with, give away, dispose of, and deliver to a person or to his agent to be delivered to him.

" 10. ' Administer ' means only administration by a person authorized to administer habit forming drugs."

The word " prescribe " was not defined.

All violations of the article were *misdemeanors* under section 443.

Then in 1929, by Laws of 1929, chapter 377, section 443 was amended so as to read:

" § 443. Penalties. A violation of any provision of this article shall be punishable as provided in the penal law." A new section (§ 1751) was added to the Penal Law by Laws of 1929, chapter 377, section 2, which made certain of the prohibited acts felonies instead of misdemeanors. It provided:

" § 1751. Violations of public health law with respect to habit forming drugs. Any person who shall peddle, *sell,* barter, or exchange any habit forming drug, in violation of article twenty-two of the public health law, *shall be guilty of a felony,* punishable by imprisonment for a term not exceeding ten years.

" Any person who shall violate any provision of such article, *other than as above specified, shall be guilty of a misdemeanor,* punishable * * *." (Emphasis supplied.) It is clear that " prescribe " was not made a felony by that section, but remained a misdemeanor.

In 1933 the Uniform Narcotic Drug Act was adopted (L. 1933, ch. 684) and the 1927 article repealed. However, the sections relevant here remained in substance unchanged. Former section 423 prohibiting certain acts became the present section 422 of the Public Health Law and provided:

" § 422. ACTS PROHIBITED. It shall be unlawful for any person to manufacture, possess, have under his control, *sell, prescribe,* administer, dispense or compound any narcotic drug, except as authorized in this article." (Emphasis supplied.)

The definitions (present § 421) remained in substance the same except that the definition of " administer " was omitted. A sale is defined as follows: " 10. ' Sale ' includes barter, exchange, or gift, or offer therefor, and each such transaction made by any person, whether as principal, proprietor, agent, servant or employee." As before, the word " prescribe " was not defined.

As to the Penal Law the present sections remain substantially the same, former section 1751 being divided into two sections, 1751 and 1751-a. (L. 1938, ch. 168, §§ 1, 2.)

Although the Attorney-General concedes that " to prescribe " *taken alone* is merely a misdemeanor, the substance of his argument is that while petitioner would have been guilty of a misdemeanor if no sale had followed, still, since a sale *was* made (although by an innocent person), the act of prescribing became a felony because the petitioner thus participated in a sale. The argument might be a cogent one under a statute such as the United States Internal Revenue Code, section 2554 (U. S. Code, tit. 26, § 2554), where there is no differentiation between " sell " and " prescribe ". That statute reads as follows: " § 2554. ORDER FORMS — (A) GENERAL REQUIREMENT. It shall be unlawful for any person to sell, barter, exchange, or give away any of the drugs mentioned in section 2550 (a) except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary." (See *Jin Fuey Moy* v. *United States,* 254 U. S. 189, 192, and *Linder* v. *United States,* 268 U. S. 5, 20, 22, in which the *Jin Fuey Moy* case was limited to its facts.)

Our State statute follows a definite plan. Public Health Law section 422, quoted (*supra*), lists the eight prohibited acts.

Unless authorized in the article [art. 22], they are unlawful. Provisions therein authorize the doing of each of the acts under certain circumstances. Thus, taking the prohibited acts in order, the following sections give authority: to manufacture, section 423; to possess, section 432; to sell, by manufacturers and wholesalers, sections 423 and 424; to sell by apothecaries, section 426; to prescribe, by physician, dentist or veterinarian, section 427; to administer, by physician, dentist, veterinarian, nurse or interne, section 427; to dispense, by physician, dentist or veterinarian, section 427; to compound, sections 423 and 424. The unlawful issuance of a prescription by a physician is to " prescribe ", as indicated in sections 422 and 427. It is not to " sell ", as prohibited in section 422 and defined in section 421, subdivision 10. To hold otherwise would be to remove the word " prescribe " from section 422, despite the fact that the Legislature has written it in alongside the word " sell." It is one of the accepted canons of construction that statutes must be read so that each word will have a meaning, and not so read that one word will cancel out and render meaningless another; that each word used in an enumeration in a statute of several classes or things must be presumed to have been used to express a distinct and different idea; that every provision of a statute was intended to serve some useful purpose. (*Palmer* v. *Van Santvoord,* 153 N. Y. 612, 616, 617; *Allen* v. *Stevens,* 161 N. Y. 122, 145.)

*People* v. *Gennaro* (261 App. Div. 533, affd. 287 N. Y. 657) involved a true sale of heroin and not a transaction whereby a duly licensed physician illegally prescribed for an addict. It is not applicable here.

The order of the Appellate Division should be reversed, with costs, the determination of the Board of Regents annulled, and the matter remitted to the Board of Regents for further proceedings not inconsistent with this opinion.

LOUGHRAN, Ch. J., LEWIS, DESMOND, THACHER, DYE and MEDALIE, JJ., concur.

Ordered accordingly.