Gabrielli, J.
(dissenting). The vital issue posed is whether allegations that a corporation substantially restrained competition and trade, unduly interfered with the free exercise of commercial activity and injured the public of this State by artificially manipulating the price of gasoline through discriminatory pricing practices, states a cause of action within the purview of the Donnelly Act (General Business Law, § 340 et seq.).
In this action brought by the State of New York against Mobil Oil Corporation (Mobil), the majority concludes that the complaint, insofar as it charges Mobil with engaging in and conducting discriminatory pricing practices, should be dismissed; and the premise for their conclusion is that the Donnelly Act was patterned after the Sherman Antitrust Act *467 (US Code, tit 15, § 1 et seq.) under which there is no proscription against price discrimination.
I cannot agree.
The Donnelly Act, an important (see Matter of Aimcee Wholesale Corp. [Tomar Prods.], 21 NY2d 621, 625-626) and broadly worded act was not intended to be given such a narrow construction. Thus, I must dissent and vote to reverse and reinstate the complaint.
Insofar as is here pertinent the Donnelly Act provides that:
"1. Every contract, agreement, arrangement or combination whereby
"A monopoly in the conduct of any business, trade or commerce or in the furnishing of any service in this state, is or may be established or maintained, or whereby
"Competition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained or whereby
"For the purpose of establishing or maintaining any such monopoly or unlawfully interfering with the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state any business, trade or commerce or the furnishing of any service is or may be restrained, is hereby declared to be against public policy, illegal and void.” (General Business Law, § 340, subd 1.)
By way of contrast, the Sherman Antitrust Act, in like pertinent part, provides that:
"1. Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal * * *
"2. Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor” (US Code, tit 15, §§ 1, 2).
There are at least four compelling reasons for my disagreement with the majority.
First, the Donnelly Act is broader than its Federal counterpart in that it proscribes unlawful "arrangements” as well as "contracts”, "conspiracies” and "combinations”. Thus, it was *468 intended, and in fact has been so interpreted, to be broader in scope and coverage than the Sherman Act (see People v American Ice Co., 140 App Div 912; Eagle Spring Water Co. v Webb & Knapp, 236 NYS2d 266, 275-276). Significantly, section 1 of the Sherman Act has been restrictively viewed and held inapplicable to the activities of one business entity because it proscribes only unlawful contracts, conspiracies or combinations, each of which requires more than unilateral action (see Six Twenty-Nine Prods.], v Rollins Telecasting, 365 F2d 478; cf. United States v Standard Oil Co., 316 F2d 884; House of Materials v Simplicity Pattern Co., 298 F2d 867). The Donnelly Act, however, broadens the spectrum of Sherman Act proscriptions by adding "arrangements”, thereby permitting the prosecution of a wider variety of wrongs. Moreover, to assume, as does the majority, that the Legislature did not intend the word "arrangement” to have substantive effect is to do violence to the canon of construction that each word in a statute must be presumed to have meaning and to have been inserted for a purpose (Matter of Tonis v Board of Regents of Univ. of State of N. Y., 295 NY 286, 293, and cases cited therein; McKinney’s Cons Laws of NY, Book 1, Statutes, § 231, p 390). Thus, the Donnelly Act is to be interpreted as covering price discrimination whereas the Sherman Act is not.
Second, while it is true that the complaint is couched in terms of price discrimination, it specifically alleges that the effect of Mobil’s "contracts, agreements, arrangements and combinations have been and are, among others: (a) to prevent many Mobil dealers from competing effectively * * * (b) [t]o enable Mobil to restrain competition * * * (c) [t]o substantially restrain competition and trade and unduly interfere with the free exercise of activity in the conduct of business by Mobil dealers”. In short, the complaint charges that through price discrimination Mobil has, and is, unlawfully and unreasonably restraining competition and trade which certainly constitutes activity outlawed by the Sherman Act (see, e.g., Peelers Co. v Wendt, 260 F Supp 193). Hence, even under the majority’s limitéd-scope interpretation of the Donnelly Act, it is manifest that the complaint states a cause of action.
Third, in Columbia Gas of N.Y. v New York State Elec. & Gas Corp. (28 NY2d 117) we held that (pp 128-129): "Even though the defendant’s promotional activity is not illegal as a *469 matter of law, it may still be unlawful if it can be shown to have actually restrained competition. (Cf. United States v. Griffith, 334 U. S. 100, 107 et seq.) Therefore, * * * we are reluctant to foreclose the plaintiff from an opportunity of factually demonstrating illegality in a comprehensive rule of reason inquiry (see, e.g., Standard Oil Co. v. United States, 283 U. S. 163, 179; Chicago Bd. of Trade v. United States, 246 U. S. 231, 238-239), especially since there will, in any event, be a trial on the merits of the first cause of action. Since, then, it does no violence to the plaintiff’s pleading to permit proof at the trial of possible anti-competitive effects, if any, of the defendant’s promotional plan, the motion to strike the second count of the complaint was properly denied.” The case at bar is analogous for here, as in Columbia Gas, the plaintiff alleges that it can be shown that defendant’s business activities actually restrained competition, thereby violating the State antitrust laws. In addition, in this case, as in Columbia Gas, there will be a trial of certain other causes of action in any event. Columbia Gas should require us to conclude that the dismissal of the price discrimination causes of action is erroneous.
Finally, it is asserted that since Congress passed the Robinson-Patman Act (US Code, tit 15, §§ 13, 13a, 13b, 21) to proscribe price discrimination practices, the Sherman Act and thus, also, the Donnelly Act does not cover those activities. The Robinson-Patman Act is aimed primarily at nipping price discriminations in the bud and, hence, prevents any price discrimination regardless of whether commerce is being restrained or not, except, of course, for certain affirmative defenses (e.g., cost justification, meeting competition and changing market conditions).* However, and importantly, the Robinson-Patman Act was not designed to proscribe restraints of trade on a broad scale and thus does not affect the scope of the Sherman Act. Therefore, since the complaint charges that the pricing practices of the defendant unreasonably restrained *470 trade and competition, the charge is patently within the purview of the Sherman Act and perforce the Donnelly Act.
Nor am I persuaded to conclude otherwise by the fact that the Legislature has outlawed price discrimination in certain closely State-regulated public concerns and industries (see, e.g., Public Service Law, § 65, subd 2 [utility rates]; Alcohlic Beverage Control Law, § 101-b, subd 2 [liquor prices]; Insurance Law, § 183, subd 1, par [c] [premium rates]; Agriculture and Markets Law, § 258-t [milk prices]). In contrast, gasoline distribution and sales are not State regulated. Gasoline and oil are commodities which are to be traded freely and subjected to normal market conditions and the influence of supply and demand factors. This is not true, of course, with the regulated commodities which, of necessity, must be more closely controlled and, thus, the Legislature enacted statutes controlling price discrimination in the sale of the regulated commodities. That does not mean, however, that the Legislature intended there to be no control over the unregulated commodities especially where, as here, there are strong allegations that trade has been restrained and the consuming public injured. Thus, I must conclude that the challenged causes of action should be sustained.
The citizens of this State have a right to expect that the price they pay for commodities has been set by the forces of free trade and that they will not be bilked out of their earnings by unscrupulous business practices indulged in by uncaring entities which may not have the consumer’s interest at heart. It was certainly the intent and expectation of the Legislature in enacting the Donnelly Act that such practices would be proscribed. To construe narrowly the statute designed to obviate undesirable business activities is to ignore its historic and fundamental purposes of preserving and promoting competition in commerce and protecting the consumer from the harm which flows from monopolistic conduct (see Park & Sons Co. v National Wholesale Druggists’ Assn., 175 NY 1; Matter of Davies, 168 NY 89, 101; Matter of Attorney-General v Consolidated Gas Co., 124 App Div 401). The Attorney-General, commendably I think, has brought this action within the limits of his powers conferred upon him by the Legislature in order to protect those within his jurisdiction from suffering the ill effects of untoward business arrangements. The Attorney-General should not be curtailed in the *471 exercise of his responsibility, being discharged pursuant to clear legislative intent.
It seems clear that there can be no doubt as to the right of the Attorney-General to pursue the challenged causes of action in order to prohibit defendant’s alleged activities which restrain fair competition and trade, resulting in the manipulation of the price of gasoline. If, however, there remains even the slightest doubt, this action, which has been brought to protect the traveling public from alleged illegal price fixing, should proceed to trial on all the remaining four causes of action, thus allowing the Attorney-General an opportunity to factually demonstrate the charged illegality (see, e.g., Columbia Gas of N. Y. v New York State Elec. & Gas Corp., 28 NY2d 117, 129, supra).
The order of the Appellate Division dismissing the first and second causes of action should be reversed and these causes of action should be reinstated.
Chief Judge Breitel and Judges Jasen, Wachtler and Cooke concur with Judge Jones; Judge Gabrielli dissents and votes to reverse in a separate opinion in which Judge Fuchs-berg concurs.
Order affirmed, with costs.

 As I interpret the majority opinion, one might conclude that the affirmative defenses in the Robinson-Patman Act have negatived the general rule that price discrimination is prohibited. With this I cannot agree. Such a theory overlooks the scheme of the statute itself which requires an alleged violator affirmatively to prove in a full-blown adversarial proceeding (and not on a motion to dismiss, as here) that the pricing policies were justifiable. Notably, the act was designed to limit the scope of the then extant affirmative defense and to strengthen price discrimination prohibitions (Federal Trade Comm. v Sun Oil Co., 371 US 505, 516; see, generally, Rowe, Price Discrimination Under the Robinson-Patman Act, pp 3-24).